Case 18-80361    Doc 174    Filed 05/14/18    Entered 05/14/18 12:28:41    Desc Main
              Document      Page 1 of 11

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GEM Hospitality, LLC, *et al.*[1] | ) | Case No. 18-80361 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Honorable Thomas L. Perkins |

**DEBTORS' APPLICATION FOR AUTHORITY TO RETAIN & EMPLOY KEEN-SUMMIT CAPITAL PARTNERS, LLC AS REAL ESTATE ADVISOR RETROACTIVE TO MAY 10, 2018 & REQUEST FOR EXPEDITED HEARING**

GEM Hospitality, LLC, and its affiliated debtors and debtors-in-possession (collectively, the "*Debtors*"), in the above-captioned Chapter 11 cases (the "*Cases*,"), through counsel, submit this application (the "*Application*") requesting authority to retain employ professional services firm Keen-Summit Capital Partners, LLC ("*Keen*") as real estate advisor for the Debtors under §§ 327(a), 328(a) and 1103 of title 11 of the United States Code (the "*Bankruptcy Code*"), retroactive to the Retention Date (defined below). In support of the Application, the Debtors state:

**JURISDICTION & VENUE**

1. The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested in this Motion are §§ 105, 328, 1103 of the Bankruptcy Code and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*").

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: GEM Hospitality, LLC (6259); Pere Marquette Hotel, LLC (2079); Pere Marquette Courtyard, LLC (0929); Pere Marquette Garage MT, LLC (5916); and Pere Marquette Garage, LLC, (3484).

**BACKGROUND & SELECTION OF KEEN**

3. The Debtors collectively own real property and improvements on which two hotels and a parking garage in Peoria, Illinois are located, including a historic hotel property that has stood in downtown Peoria since the 1920s and a second hotel property also located in Peoria's business and entertainment district. The Debtors also operate one of the hotels located on the property owned by the Debtors. A more complete description of the Debtors' operations and history is set forth in the *Declaration of Jeffrey Varsalone in Support of First Day Motions*. (Dkt. 18.)

4. The Debtors filed for Chapter 11 bankruptcy protection on March 17, 2018 (the "***Petition Date***"). The Debtors are operating their businesses and as debtors-in-possession under § 1107(a) and 1108 of the Bankruptcy Code. No committee has been appointed in these Cases. *See* (Dkt. 120.)

5. The Debtors have been actively exploring ways to monetize their assets and maximize recoveries to creditors in these Cases. As such, the Debtors have determined that running a robust sale process that adequately exposes their assets to capital markets and hotel owners and operators will most effectively achieve this result.

6. To facilitate a sale of their assets and discharge their fiduciary duties to maximize value for creditors in these Cases, the Debtors' CRO determined in his business judgment that the Debtors should retain the services of a real estate advisory firm able to provide a timely market value assessment of the Debtors' real estate and operations and market the Debtors' assets and attract qualified buyers.

7. The Debtors have determined that retaining professionals with experience in the sale of hotel real estate and operations fulfills a need that complements the services provided by the Debtors' other restructuring professionals in these Cases.

8. After making this determination, the Debtors solicited and interviewed numerous professional advisory firms, including traditional real estate brokerage firms and investment banking firms.

9. Following these interviews and arms' length discussions, the Debtors selected Keen as the real estate advisor for their assets because of, among other reasons, Keen's experience and knowledge in complex distressed real estate transactions.

10. Keen is a consulting firm with significant experience representing debtors and owners of distressed real estate assets, concerning the disposition of real estate and related assets in bankruptcy proceedings, as well as in other distressed and insolvency situations. Keen has an excellent reputation for using successful marketing strategies and is well-suited to represent the Debtors in marketing their assets for sale.

11. During the course of the Debtors' discussions with Keen and other candidate firms, the Debtors were tendered a non-binding letter of intent to purchase the Debtors' assets for $42 million, from a party interested in acting as a stalking horse bidder in the Debtors' contemplated sale process.

12. In connection with these discussions and in light of the stalking horse letter of intent, the Debtors and Keen negotiated the terms of the Keen's engagement and compensation, which remains subject to Court approval.

### RELIEF REQUESTED

13. The Debtors seek to retain and employ Keen as their real estate advisor in these Cases effective as of May 10, 2018 (the "***Retention Date***"), set forth in the Retention Agreement (the "***Retention Agreement***"), dated as of the Retention Date and attached to the Bordwin Declaration (defined below) as Exhibit 1. The Debtors accordingly request that the Court enter an order, substantially in the form attached here, under §§ 328(a) and 1103 of the Bankruptcy Code,

and Bankruptcy Rule 2014(a) authorizing the Debtors to retain and employ Keen as their real estate advisor to perform necessary professional services during these chapter 11 cases.

14. Under § 328(a) of the Bankruptcy Code, the Debtors request that the Court approve Keen's retention on the terms and conditions set forth in this Application, the Retention Agreement, and the Declaration of Matthew Bordwin (the "**Bordwin Declaration**"), attached here as **Exhibit A**, which provide that Keen will be compensated primarily through a Transaction Fee, calculated based on the value of a successful Transaction by the Debtors in these Cases through a sale of their assets under § 363 of the Bankruptcy Code, an Advisory Fee, and reimbursement of Keen's out of pocket expenses. The Transaction Fee formula and Advisory Fee amount vary depending on the manner of the Transaction, as provided below.

### A. Services to be Provided by Keen

15. The Debtors contemplate Keen will provide the following services in these Cases, among others as may be necessary during the course of its employment:

(1) On request, review pertinent documents and consult with the Debtors' attorneys, as appropriate;

(2) Coordinate with the Debtors regarding developing due diligence materials;

(3) Develop, subject to the Debtors' review and approval, a marketing plan and implement each facet of the marketing plan;

(4) Communicate regularly with prospective buyers and maintain records of communications;

(5) Solicit offers for a Transaction (as defined under the Retention Agreement);

(6) Assist the Debtors in evaluating, structuring, negotiating and implementing the terms and conditions of a proposed Transaction;

(7) Run an auction or overbid process according to bidding and sale procedures the Debtors expect to file in these Cases;

(8) Communicate regularly with the Debtors and their professional advisors in connection with the status of Keen's efforts; and

(9) Work with Debtors' attorneys responsible for implementing proposed Transactions, reviewing documents, negotiating and assisting in resolving problems which may arise during that process.

16. The Debtors submit that Keen's services are necessary to facilitate a sale process in these Cases, and to effectively implement the process chosen in coordination with the Debtors' other professionals and other parties interest.

17. Keen acknowledges that the scope of its own retention does not include providing the Debtors with any services for which the Debtors' other professionals have been employed, and that Keen will work to avoid any duplication of services in these Cases.

18. As discussed above, Keen's professionals have extensive experience analyzing, structuring, negotiating, and effecting a sales process related to the Debtors' needs in these Case.

### B. Keen's Professional Compensation

19. Section 328(a) of the Bankruptcy Code authorizes the Court to approve Keen's retention on any reasonable terms. 11 U.S.C. § 328. The Debtors submit that the most reasonable terms and conditions are those agreed upon by Keen and the Debtors, which are substantially similar to those entered into between Keen and other clients on a regular basis in a competitive market for investment banking services.

20. Subject to the Court's approval, Keen will charge for its professional services on the following terms, more fully described in the Retention Agreement attached to this Application:

**(a) Advisory & Transaction Fees**

Under the terms of the Retention Agreement, the Debtors and Keen have agreed to two alternative Transaction Fee structures depending on the form of Transaction pursued by the Debtors in these Cases. in the event there is no "Covered Party Transaction," as defined in the Retention Agreement–that is, the Covered Party does not execute a stalking horse agreement under similar terms as the LOI—the Debtors have agreed to pay Keen the following fees:

*(1) Advisory Fee*

For the review of documents and the creation of marketing strategy, on the Effective Date, the Debtors have agreed to pay Keen a nonrefundable advisory and consulting fee of $50,000 (the "**Advisory Fee**"). The Advisory Fee will be fully set off against any Transaction Fees earned.

Keen has further agreed that, in the event INDURE Build-to-Core Fund credit bids and closes a Transaction for the Debtors' assets, Keen's fee will be limited to this Advisory Fee.

*(2) Transaction Fee*

At the closing of a Transaction (whether completed individually, part of a package, or as part of a sale of all or a portion of the Debtors' business or as part of a plan of reorganization), the Debtors have agreed to pay Keen a Transaction Fee equal to:

(i)   2.5% for the first $34 million; plus

(ii)  3.5% for the portion of the sale price greater than $34 million up to $36 million; plus

(iii) 4.5% for the portion of sales price greater than $36 million up to $38 million; plus

(iv)  5% for the portion of the sales price exceeding $38 million.

**(b) Covered Party Advisory & Transaction Fees**

In light of the Letter of Intent submitted to the Debtors by a party interested in serving as a stalking horse bidder for the Debtors' assets at a purchase price of $42 million, the Debtors negotiated a separate "Covered Party," fee structure under the terms of the Retention Agreement. In the event the Debtors enter into an agreement with the Covered Party to act as a stalking horse purchaser, the Debtors and Keen have agreed to the following fee structure:

*(a) Covered Party Advisory Fee*

The Debtors have agreed to pay Keen an advisory fee of $125,000 (the "**Covered Party Advisory Fee**") for the review of documents and the creation of marketing strategy. The Covered Party Advisory Fee will be fully set off against any Transaction Fees earned.

*(b) Covered Party Transaction Fee*

At the closing of a Covered Party Transaction (whether completed individually, part of a package, or as part of a sale of all or a portion of the Debtors' business or

as part of a plan of reorganization), the Debtors have agreed to pay Keen a transaction fee (the "**Covered Party Transaction Fee**") equal to:

    (i) 17.5% of the portion of the purchase price over the initial stalking horse contract amount up to a purchase price of $50 million; plus

    (ii) 5% of the purchase price in excess of $50 million.

21.     For purposes of clarity, the above-described fee structure agreed to between the Debtors and Keen operate alternatively to one another. Keen's fees will be based on the manner of Transaction that takes place, and in no event will both of the above fee structures apply to calculating Keen's compensation for its professional fees.

**(c) Expenses**

Keen also intends to charge the Debtors, by separate invoices, for its actual out-of-pocket expenses incurred in connection with its engagement as the Debtors' real estate advisor. The types of expenses incurred by Keen for which it will charge the Debtors are listed in the Retention Agreement, and consist of, but are not limited to: marketing expenses associated with the sale process, travel, lodging, FedEx, postage, telephone charges, and photocopying charges.

**C. Indemnification**

22.     As set forth in the Retention Agreement, the Debtors have agreed to indemnify Keen and its respective officers, directors, employees, and agents, each in their capacity as such, against and from all claims arising from or in connection with their performance of services described in the Retention Agreement, other than those arising from Keen's gross negligence or willful misconduct in performing the Services. The indemnification provision was negotiated between the Debtors, and Keen and the Debtors submit that the terms are reasonable and in the best interests of the Debtors, their estates and their creditors.

**D. Keen is a Disinterested Person**

23.     Except as disclosed in the Bordwin Declaration, (Ex. A) Keen has not represented the Debtors, their creditors, or any other parties in interest, in any matter relating to the Debtors or

their estates.

24. As set forth in the Bordwin Declaration, Keen has no agreement with any other entity to share any compensation received. Accordingly, Keen is a "disinterested person," as defined under § 101(14) of the Bankruptcy Code, and Keen's employment is in the best interests of the Debtors, and should be approved.

### E. Section 328 Permits the Employment & Retention of Keen on Terms Substantially Similar to those in the Retention Agreement

25. The Debtors seek approval of the Retention Agreement and the compensation terms agreed to by the Debtors and Keen under § 328 of the Bankruptcy Code. Section 328 provides for employment of a professional "under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. . . ." 11 U.S.C. § 328(a). Accordingly, § 328 permits the compensation of professionals, including real estate advisors, investment bankers, and financial advisors, on more flexible terms that reflect the nature of their services and market conditions. As the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum (In re Nat'l Gypsum Co.)*:

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*In re Nat'l Gypsum Co.*, 123 F. 3d 861, 862 (5th Cir. 1997) (internal citations omitted).

26. Additionally, under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("**BAPCPA**"), Congress modified § 328 to provide that professionals employed under § 328 may be compensated "on a fixed percentage or fee basis, or on a contingent fee basis." 11

U.S.C. § 328(a). As amended under BAPCPA, the Bankruptcy Code makes clear that a debtor may retain a professional on fixed and contingent fee bases, subject to court approval, such as the fee structure agreed to by the Debtors and Keen in the Retention Agreement.

27. As set forth above, regardless of the Court's approval of the Retention Agreement under Bankruptcy Code § 328, Keen intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and any other applicable procedures and orders of the Court, consistent with the fee structure set forth in the Retention Agreement.

28. Further, consistent with its ordinary practice and the practice of financial advisors and real estate advisors in other Chapter 11 cases, whose fee arrangements are typically not hours-based, Keen has informed the Debtors that it is neither Keen's general practice—nor the practice of other real estate advisory or investment banking firms—to keep detailed time records similar to those customarily kept by attorneys and other professionals compensated on an hourly basis. Since Keen's compensation will be calculated and based, in large part, on the occurrence of Transactions, Keen requests that it not be required to file time records in these Cases.

29. Similar fixed fee and transaction fee structures have been approved and implemented in other Chapter 11 cases in this Circuit and elsewhere. *See, e.g.*, *In re Kmart Corp.*, Case No. 02-B-02474 (SPS) (Bankr. N.D. Ill. Apr. 23, 2002) (authorizing retention of Dresdner Kleinwort according to a monthly fee and transaction fee structure and subject to standard of review in § 328(a)); *In re Erickson Retirement Cmtys., LLC*, Case No. 09-B-37010 (SGJ) (Bankr. N.D. Tex. Nov. 24, 2009) (authorizing retention of Houlihan Lokey subject to standard of review in § 328(a)); *In re Hartmarx Corp.*, Case No. 09-B02046 (BWB) (Bankr. N.D. Ill. Feb. 19, 2009).

30. The Retention Agreement appropriately reflects the nature and scope of services Keen will provide to the Debtors, and its substantial experience with respect to financial advisory and investment banking services. The Retention Agreement and fee structure are also consistent with the fee structures typically utilized by Keen and other investment banking firms, who do not bill clients on an hourly basis. Keen's strategic and financial expertise and understanding of the Debtors' needs were important factors in negotiating the terms of the Retention Agreement. The Debtors submit that the ultimate benefit of Keen's services will not be accurately measured solely by reference to the number of hours to be expended by its professionals, and as a result, the Retention Agreement and compensation terms were developed to be tied to the success of a Transaction in these Cases benefitting the Debtors' estates. The Debtors submit that the terms of Keen's engagement are both fair and reasonable under the standards set forth under Bankruptcy Code § 328(a), and that any order employing Keen state that compensation and reimbursements made to Keen in connection with its engagement as the Debtors' real estate advisor shall be subject to the standards of § 328(a), and not § 330, of the Bankruptcy Code.

**NOTICE, NO PREVIOUS REQUEST, & REQUEST FOR EXPEDITED HEARING**

31. Under Bankruptcy Rule 2014(a), notice of a retention application need only be served on the Office of the United States Trustee. *See* 9 COLLIER ON BANKRUPTCY § 2014.02, at 2014-4 (15th ed. rev. 2003) ("The [retention] application must be filed with the clerk of the court, and in cases other than those under chapter 9, served upon the United States Trustee"). Nonetheless, notice of this Application has been sent to: (: (a) the Office of the U.S. Trustee; (b) counsel to INDURE Build-to Core Fund, LLC; (c) counsel to the City of Peoria; and (c) all other parties requesting notice in these Cases.

32. The Debtors further submit that no previous request for the relief sought in this

Application has been made to this or any other court.

33.    The Debtors further request that the Court set this Application for hearing on an expedited basis, in light of the need to move forward with the Debtors' contemplated sale process. **The Debtors request that a hearing on this Application be set for May 24, 2018 at 10:00 a.m.** at which time the Court has already scheduled a hearing in these Cases on other matters pending before the Court.

*Wherefore*, the Debtors request that the Court enter an order, substantially in the form attached to this Application as **Exhibit B**, that (a) authorizes the Debtors to retain and employ Keen under §§ 327(a), 328(a), and 1103 of the Bankruptcy Code, and Rule 2014 of the Bankruptcy Rules, according to the terms set forth in the Retention Agreement, this Application, and the Bordwin Declaration; and (b) granting any other further relief the Court deems appropriate under the circumstances.

Date: May 14, 2018

| | |
|---|---|
| *GEM Hospitality, LLC, et al.* | *GEM Hospitality, LLC, et al.* |
| By: /s/ Jeffrey Varsalone | By: /s/ Mark Melickian |
| Jeffrey T. Varsalone<br>Chief Restructuring Officer | One of their Attorneys<br><br>Jonathan Friedland (IL No. 6257902)<br>Mark Melickian (IL No. 6229843)<br>Elizabeth B. Vandesteeg (IL No. 6291426)<br>Jack O'Connor (IL No. 6302674)<br>**SUGAR FELSENTHAL GRAIS & HELSINGER LLP**<br>30 N. LaSalle St., Ste. 3000<br>Chicago, Illinois 60602<br>Telephone: 312.704.9400<br>Facsimile: 312.372.7951<br>jfriedland@SFGH.com<br>mmelickian@SFGH.com<br>evandesteeg@SFGH.com<br>joconnor@SFGH.com<br><br>*Counsel to the Debtors* |